

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

LISA PHIPPS,

Plaintiff,

v.

AGAPE COUNSELING AND THERAPEUTIC
SERVICES, INC. *et al.*,

Defendants.

Civil Action No. 3:13-CV-166

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss ("Motion") (ECF No. 16), filed on October 3, 2014. Relator filed a response in opposition on October 15, 2014 ("Opp'n Mem.") (ECF No. 18), and Defendants subsequently filed a reply on October 21, 2014 ("Reply Mem.") (ECF No. 19). The parties have not requested a hearing on this matter, and the Court finds that oral argument is unnecessary. *See* E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Motion is GRANTED.

## I.    BACKGROUND

### a.  *Factual Background*

This is an action to recover damages and civil penalties on behalf of the United States and the Commonwealth of Virginia arising from alleged false and/or fraudulent records, statements and claims made, used, or presented and caused to be made, used or presented by Defendants, Agape Counseling and Therapeutic Services, Inc. ("Agape"), Sherie Mawusi ("Mawusi"), and Lena Baker-Scott ("Baker-Scott") (collectively, the "Defendants"), to Medicaid and other state and federal programs in violation of the Federal Civil False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code § 8.01-216.1 *et seq.* Relator, Lisa Phipps ("Phipps" or "Relator"), brings these claims on behalf of

1

the United States and the Commonwealth of Virginia pursuant to the *qui tam* provisions of the FCA and the VFATA. The specific allegations as detailed in the Complaint are as follows.

Phipps started working at Agape in May 2006 and was a Director of Community Mental Health Services.[1] Agape offers mental health programs to the community, including outpatient psychotherapy, substance abuse counseling, therapeutic day treatments, mental health support services for children and adults, and intensive in-home services. Mawusi is a licensed clinical social worker ("LCSW") and owner of Agape. Baker-Scott is also an owner of Agape. She is a Qualified Mental Health Professional ("QMHP")[2], but not a Licensed Mental Health Professional ("LMHP")[3].

The procedure that was employed at Agape prior to September 2010 was as follows: an initial "assessment" is completed face-to-face by a LMHP or a QMHP after which an Individualized Service Plan ("ISP") is drawn up by the LMHP or QMHP. Agape bills Medicaid $91.00 for an intake assessment. However, only direct face-to-face contacts and services by the LMHP or QMHP to individuals are reimbursable by Medicaid. Therefore, if an Agape staff person, other than an LMHP or a QMHP, actually completed the assessment, an LMHP or a QMHP could not simply "sign off" on the assessment in order to qualify for Medicaid reimbursement. Next, after an intake assessment is completed, and once the actual ISP is developed, a Qualified Paraprofessional in Mental Health ("Qualified Paraprofessional")[4] may provide counseling services under the supervision of a QMHP. The Complaint alleges that "Agape allowed unqualified employees to complete face-to-face assessments and reassessments,

---

[1] Phipps' title as "Director" denotes her position as a division manager or coordinator. (Opp'n Mem. at 2 n.1.)

[2] A QMHP is a person in the human services field who is trained and experienced in providing psychiatric or mental health services to individuals who have a primary or secondary psychiatric diagnosis. (Compl. ¶ 28.)

[3] A LMHP is a person who is licensed in Virginia as a physician, clinical psychologist, professional counselor, clinical social worker, marriage and family therapist, a psychiatric clinical nurse specialist or a psychiatric nurse practitioner. (Compl. ¶ 27.)

[4] An example of a Qualified Paraprofessional is an individual who has an associate's degree in a related field, such as social work, psychology, psychiatric or vocational rehabilitation or counseling, and has at least one year of experience providing direct services to persons with a diagnosis of mental illness. (Compl. ¶ 31.)

and nevertheless submitted these intakes to Medicaid for payment." (Compl. ¶ 32.)

Further, on July 23, 2010, the Department of Medical Assistance Services ("DMAS") announced changes to Community Mental Health Rehabilitative Services, specifically Adult Oriented Services, to be implemented on September 1, 2010. These changes required the initial assessment and six month reauthorization to be done "face-to-face by the LMHP or a license-eligible mental health professional" ("LMHP-E")[5] and no longer could be conducted by a QMHP. Under these new regulations, Agape only had four employees company-wide who could now perform the face-to-face intakes: Mawusi; Tiffany Dobbins ("Dobbins"), Coordinator for Mental Health Support; LaDonna Stone ("Stone"), Coordinator for Intensive In-Home Services; and Marie Payne-Clore ("Payne-Clore"), Director of Agape's Culpeper location. Because of the small number of eligible employees, Agape "stretch[ed] the category way beyond its legitimate definition," (Compl. ¶ 40), by claiming that "being license eligible meant you were 'working on it,'" (id. at ¶ 41).

The alleged wrongdoing in this case began when defendants billed government health programs for services that were not eligible for payment because the services were not provided by the appropriate qualified mental health professional. Defendants forged documents and falsified records in order to avoid having to repay money to government health programs.

Specifically, in February 2012, Mawusi and Baker-Scott began to request certain files from Jennifer Jenkins ("Jenkins"), Director of Quality Assurance. David Wilson ("Wilson"), Mawusi's personal assistant, created a "File Check-Out Log" for both Mawusi and Baker-Scott. In August 2012, Phipps began to suspect something was wrong with Agape's business practices. She noticed the File Check-Out Log and the fact that the clients' files on this list were those for whom assessments had been performed by employees on her team who were "working on it" and who had not received a letter of approval from the Virginia Board of Counseling.

---

[5] License-Eligible Mental Health Professionals are persons who have completed a graduate degree from a program that expressly prepares individuals to practice counseling and counseling interventions as defined in Va. Code § 54.1-3500 and 18 VAC § 115-20 et seq., and who are under the direct personal supervision of an LMHP. (Compl. ¶ 35.)

Additionally, she noticed that Payne-Clore's signature was on one of the assessments. Phipps knew that because Payne-Clore was the Director of Agape's Culpeper location, Payne-Clore would never have completed an assessment for a client assigned to Phipps' team or caseload. Upon further examination, Phipps found more files containing assessments signed by individuals other than the persons she knew had completed them. Phipps proceeded to make a list of such cases in order to protect herself since as the Director she was responsible for her files.

In early June 2012, Wilson began to present files to Phipps as well as other directors at Mawusi's directive, with sticky notes attached and instructions to "fix" this, "add" that or "change" something else. Specifically Phipps was requested to remove the "ACTS Staff Completing Assessment" on Agape's Adult Intake Assessment form and delete the name of the person who actually completed the assessment. These changes were requested for employees who had completed assessments after the regulations were changed in 2010, and who were no longer qualified to perform the assessments. Phipps was then directed to print the altered assessment with a blank signature page so that a different person, including Mawusi and Baker-Scott, could sign it. These altered documents would then be placed in the clients' files. These requests for changes were most prevalent before a DMAS or Medicaid audit. Phipps refused to make the proposed changes, and instead gave the files back unaltered.

### b. *Procedural Background*

Phipps filed her four-count Complaint in this Court on March 15, 2013 (ECF No. 1), in which she alleges: (1) violations of the False Claims Act (count one); (2) concealing obligation to pay money to the Government (commonly referred to as a "reverse false claim"), in violation of 31 U.S.C. § 3729(a)(1)(G) (count two); (3) conspiracy to submit false claims, in violation of 31 U.S.C. § 3729(a)(1)(C) (count three); and (4) violations of the Virginia Fraud Against Taxpayers

Act (count four).[6] In her prayer for relief, Phipps requests the Court to enter judgment against Defendants in an amount equal to three times the amount of damages the United States as well as the Commonwealth of Virginia have sustained because of Defendants' actions, plus a civil penalty of $11,000 for each violation of the FCA as well as the VFATA; the maximum award permitted under § 3730(d) of the FCA; as well as all costs of this action, including attorneys' fees. The Complaint was initially filed under seal to allow the United States and the Commonwealth to investigate the claims and determine whether to intervene. 31 U.S.C. § 3730(b); Va. Code § 8.01-216.5(B). On May 20, 2014, the United States and the Commonwealth noticed their intent not to intervene and the case was subsequently unsealed.

Defendants then filed the present Motion, requesting the Court to dismiss Relator's entire Complaint. The issue is now ripe for decision.

## II.   **LEGAL STANDARD**

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

---

[6] Relator's Complaint also contains allegations relating to retaliation, (Compl. ¶¶ 76–82), although Relator does not allege an independent count for retaliation.

5

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. In other words, the plaintiff's complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Further, in ruling on a motion to dismiss, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (citations omitted); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

## III.   **DISCUSSION**

### (1) Fraud Claims

Relator brings her claims pursuant to the FCA and VFATA, which contain nearly identical provisions that hold a person liable who: (1) "knowingly[7] presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), Va. Code § 8.01-216.3(A)(1) ("First Violation"); (2) "knowingly makes, uses, or causes to be made or

---

[7] The FCA defines "knowingly" to mean that a person "has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)–(iii).

used, a false record or statement material to a false or fraudulent claim," 31 U.S.C.

§ 3729(a)(1)(B), Va. Code § 8.01-216.3(A)(2) ("Second Violation"); and (3) "knowingly makes,

uses, or causes to be made or used, a false record or statement material to an obligation to pay

or transmit money or property to the Government, or knowingly conceals or knowingly and

improperly avoids or decreases an obligation to pay or transmit money or property to the

Government," 31 U.S.C. § 3729(a)(1)(G), Va. Code § 8.01-216.3(A)(7) ("Third Violation").

Because the statutes are identical, courts look to decisions interpreting the FCA in considering

actions brought under the VFATA. *See, e.g., United States ex rel. DeCesare v. Americare

Inhome Nursing*, 757 F. Supp. 2d 573, 582–90 (E.D. Va. 2010); *United States ex rel. Rector v.

Bon Secours Richmond Health Corp.*, No. 3:11-CV-38, 2014 WL 1493568, at \*5, 7 (E.D. Va. Apr.

14, 2014) (finding that the VFATA and FCA are analogous).

      With regards to both the First and Second Violations, a relator must plead that "(1) 'there

was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite

scienter; (3) that was material[8]; and (4) that caused the government to pay out money or to

forfeit moneys due (i.e., that involved a 'claim'[9]).'" *United States ex rel. McLain v. KBR, Inc.*, No.

1:08-cv-499 (GBL/TCB), 2013 WL 710900, at \*5 (E.D. Va. Feb. 27, 2013) (citations omitted).

This four-prong test applies regardless of whether a relator seeks the attachment of liability

pursuant to § 3729(a)(1)(A) or § 3729(a)(1)(B). *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d

1318, 1327–28 (11th Cir. 2009) (holding that § 3729(a)(1)(B) requires proof that the government

actually paid a false claim);[10] *see also McLain*, 2013 WL 710900, at \*5.

      Importantly with regards to the fourth element defined above, "[t]he statute[s] focus[]

on liability as to the claim for payment, not the underlying fraudulent conduct." *McLain*, 2013

WL 710900, at \*4 (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th

---

[8] "Materiality depends on whether the false statement has a natural tendency to influence agency action or is capable of influencing agency action." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) (citation and internal quotation marks omitted).
[9] The term "claim" is defined at 31 U.S.C. § 3729(b)(2).
[10] *Hopper* relied on the previous version of 31 U.S.C. § 3729, and thus refers to § 3729(a)(1) and § 3729(a)(b).

Cir. 1999)). In other words, the central question in a False Claims Act case "is whether the defendant ever presented a 'false or fraudulent claim to the government.'" *McLain*, 2013 WL 710900, at \*4; *see also United States ex rel. Nathan v. Takeda Pharm. North America, Inc.*, 707 F.3d 451, 456 (4th Cir. 2013) (citation omitted) ("[W]hen a relator fails to plead plausible allegations of presentment, the relator has not alleged all the elements of a claim under the Act."); *Rector*, 2014 WL 1493568, at \*7 (citation and internal quotation marks omitted) ("[W]ithout such plausible allegations of presentment, a relator not only fails to meet the particularity requirement of Rule 9(b), but also does not satisfy the general plausibility standard of *Iqbal*.").

Because these Acts require false or fraudulent statements, a plaintiff must additionally meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *Nathan*, 707 F.3d at 455. Rule 9(b) requires that complainants plead "the circumstances constituting fraud or mistake . . . with particularity." Fed. R. Civ. P. 9(b). At a minimum, a plaintiff alleging fraud must describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation and internal quotation marks omitted). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Defendants assert that Relator's Complaint fails to plead with sufficient particularity any of the above-defined elements. Specifically, Defendants argue that Relator fails to plead when or where the fraud was committed as well as who committed the fraud or if the claims were ever submitted to government agencies. Relator attempts to combat her Complaint's deficiencies, but her arguments are unavailing. The Court need only address the final element required to be pled under the statutes–whether Relator has pled presentment of the fraudulent claims to a government agency for payment–in order to hold that Relator's fraud claims fail. *See Rector*,

8

2014 WL 1493568, at *7.

The Complaint's failure to allege any claims for payment is fatal to Relator's First and Second claim. *McLain*, 2013 WL 710900, at *5. As the Fourth Circuit has advised, an FCA plaintiff cannot "merely [] describe a private scheme in detail but then [] allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Nathan*, 707 F.3d at 456–57 (citation and internal quotation marks omitted). Instead, Rule 9(b) requires "some indicia of reliability" to support Relator's allegation that a false claim was actually presented to the government. *Id.* at 457 (citation omitted). Thus, even if the Court were to find that Relator sufficiently alleged fraudulent conduct, that being Defendants changed the intake assessments to include the signatures of qualified physicians, Relator fails to allege the presentment of a claim by Defendants to a government agency. *Id.* at *5.

The only instances in the Complaint where Relator discusses billing are as follows:

> The wrongdoing in this case began when defendants billed government health programs for services that were not eligible for payment, and were exacerbated when defendants chose not to repay the money it had obtained from such payments even though those services were not eligible for payment . . . . (Compl. ¶ 38.)

> While Agape was being audited by Medicaid, Mrs. Phipps was presented with a sampling of her files which show that Medicaid was billed for units that were not substantiated in the documentation Mrs. Phipps had presented to the billing administrator. (Compl. ¶ 62.)

> In July, 2010, billing manager Teisha Sparrow instructed Mrs. Phipps to stop tracking units; Mrs. Sparrow further said that she would let Mrs. Phipps know if she was close to maxing out on the 372 units allowed per fiscal year. Mrs. Phipps was puzzled as to why some of her clients would "run out of units," but now she realizes that Medicaid was being billed beyond the services Agape was providing. (Compl. ¶ 64.)

Relator "has been unable to provide any billing information such as copies of a single actual bill or claim or payment, amounts of any charges, actual dates of claims, policies about billing or even second hand information about billing practices." *Rector*, 2014 WL 1493568, at *8. Relator's inability to plead this required element is supported by the complete lack of argument

9

she provides in her opposition brief.

The Fourth Circuit in *Nathan* recognized the potential difficulties of a relator in obtaining the information necessary to plead such claims. Nevertheless, the Court held that the "pleading requirements do not permit a relator to bring an action without pleading facts that support all the elements of a claim." *Nathan*, 707 F.3d at 458. Because Relator "cannot plausibly claim that the named Defendants themselves *actually* submitted false claims," Rector, 2014 WL 1493568, at *8, the Court grants Defendants' Motion as to the alleged First and Second Violations in Counts I and IV of Relator's Complaint.

With regards to the Third Violation, which is alleged in Count II of Relator's Complaint, Relator has failed to state a claim upon which relief can be granted. The Third Violation presents what is commonly known as a "reverse false claim," which involves "any fraudulent conduct that results in no payment to the government when a payment is obligated." *Pencheng Si v. Laogai Research Found.*, No. 09-cv-2388 (KBJ), 2014 WL 5446487, at *9 (D.D.C. Oct. 14, 2014). To make out a prime facie case of liability, Relator must prove that Defendants did not pay back to the government money that it was obligated to return. *United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 444 (3d Cir. 2004). This Third Violation is also subject to the heightened pleading standards under Rule 9(b) as described above. *See Pencheng Si*, 2014 WL 5446487, at *15.

Relator's Complaint merely contains conclusory allegations that Defendants avoided their obligation to pay moneys to the Government, (*see* Compl. ¶¶ 90–92), and boilerplate assertions that simply restate the statutory language of 31 U.S.C. § 3729(a)(1)(G). *See Iqbal*, 556 U.S. at 678. For example, Relator states the following:

> . . . Defendants received multiple overpayments from the Virginia Department of Medical Assistance Services ("DMAS"). Defendants were aware, at all times, that the monies received for the above-mentioned false claims were overpayments, and defendants took multiple affirmative steps to avoid repaying the monies owed to DMAS. (Compl. ¶ 3.)

> Providers can be required to refund any overpayments if they are found to

have billed Medicaid contrary to the law . . . (*Id.* at ¶ 22.)

> The wrongdoing in this case began when defendants billed government health programs for services that were not eligible for payment, and were exacerbated when defendants chose not to repay the money it had obtained from such payments even though those services were not eligible for payment; instead, defendants forged documents and falsified records in order to avoid having to repay the money to government health programs. (*Id.* at ¶ 38.)

> Mrs. Phipps knew that Agape had to potentially reimburse Medicaid at least $300,000 due partially to [Kendra Artis' [Defendants' former employee] lack of qualification for the 2009 [Medicaid] audit. (*Id.* at ¶ 69.)

> Without a valid assessment or reassessment, the entire course of treatment that follows cannot legally be billed to Medicaid; and if they are billed, those monies must be repaid. According to Mrs. Phipps' calculations, the amount in Medicaid payments represented by Mrs. Artis's [sic] clients' files alone . . . amounts to over one million dollars. (*Id.* at ¶ 74.)

These allegations fall short of satisfying Rule 9(b). Relator does not provide any specific factual allegations about what fraudulent record or statement Defendants made that caused them to avoid repaying the government, who made such a record or statement, when it was made, where it was made, or its contents. As a result, Relator has failed to allege a cause of action for a "reverse false claim."

(2) <u>Conspiracy Claim</u>

In Count  III and IV of her Complaint, Relator alleges that Defendants "knowingly conspired to present or cause to be presented, false or fraudulent claims to the United States Government [and the Commonwealth of Virginia] for payment or approval," (Compl. ¶¶ 95, 102), in violation of 31 U.S.C. § 3729(a)(1)(C) and Va. Code § 8.01-216.3(A)(3). "To prove an FCA conspiracy, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the Government and (2) at least one overt act performed in furtherance of that agreement." *Rector,* 2014 WL 1493568, at *12 (citation omitted). Additionally, the relator "'must show that the conspirators agreed to make use of the false record or statement to achieve this end.'" *Id.* (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 665 (2008)). Because "Relator's conspiracy claim []

11

is premised on [her] underlying FCA violations, [the conspiracy claim] necessarily fails because Relator's individual FCA claims do not pass muster under Rule 9(b)." *Id.* (citation omitted).

(3) <u>Retaliation Claim</u>

Although Relator does not include an independent count in her Complaint alleging retaliation, because her Complaint references such action and because the parties discuss this allegation in their moving papers, the Court will dispose of the argument below.

Relator alleges that because she would not make the requested changes on the files, Defendants retaliated against her in violation of 31 U.S.C. § 3730(h) and Va. Code § 8.01-216.8. Both of these statutes provide the following:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section . . . .

31 U.S.C. § 3730(h)(1); *see also* Va. Code § 8.01-216.8. Specifically, Relator alleges that she did not receive supplies when needed, as other directors did, and Defendants made "thinly veiled threats directed at her employment." (Compl. ¶¶ 76–80.) Relator also notes that upon resolution of Defendants' present Motion, she plans to seek leave of Court to amend her Complaint to reflect the fact of her termination from Agape. (Opp'n Mem. at 14.)

To establish a claim of FCA retaliation, a relator "must allege that (1) he engaged in protected conduct such as taking acts in furtherance of an FCA suit or a related internal report; (2) his employer knew of those acts; and (3) his employer treated him adversely because of these acts." *Rector,* 2014 WL 1493568, at *13 (citations omitted). "All three factors must exist in order for [Relator] to prevail." *United States ex rel. Parks v. Alpharma, Inc.,* 493 F. App'x 380, 388 (4th Cir. 2012). With regards to the first element, "[t]he Fourth Circuit applies the objective 'distinct possibility' standard to determine whether an employee has engaged in protected activity." *Rector,* 2014 WL 1493568, at *13 (citing *Glynn v. EDO Corp.,* 710 F.3d 209, 214 (4th

Cir. 2013)). This standard requires relator to "show that he was investigating 'matters that reasonably could lead to a viable FCA action.'" *Id.* (quoting *Glynn*, 710 F.3d at 214). For the second prong, or "notice" prong, "the employer must be 'on notice that litigation is a reasonable possibility.'" *Parks*, 493 F. App'x at 388 (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 868 (4th Cir. 1999)).

Here, Relator first alleges that she made a list of cases she believed were fraudulent "in order to protect herself." (Compl. ¶ 50). She next alleges that on July 23, 2012, she sent an email to Mawusi and Baker-Scott "following up on the files she had been given to 'change' stating that she was 'extremely uncomfortable with adding/changing/deleting names on intakes and/or reassessments . . . and even asking others to do this or sign off on them, when they in fact did not complete them.'" (*Id.* at ¶ 52.) Relator's retaliation allegations are not sufficient to survive the present motion to dismiss. She wholly fails to allege that her actions placed Defendants "'on notice that litigation is a reasonable possibility.'" *Parks*, 493 F. App'x at 388 (quoting *Eberhardt*, 167 F.3d at 868). Because the Court finds that Relator cannot prove this required element of her retaliation claim, the Court need not address the remaining elements. *See Parks*, 493 F. App'x at 388.

## IV.    CONCLUSION

For the foregoing reasons, the Motion is GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

> /s/
> James R. Spencer
> Senior U. S. District Judge

ENTERED this ___21st___ day of May 2015.